JgSHORTESS, C.J.
Bernice Addison Brumfield died on November 8, 1995. She had two children, William L. Brumfield (William) and Noel A. Brumfield (Noel). In her olographic will she bequeathed two pieces of property to her grandson, Noel Vincent Brumfield, II (Vince), and named William universal residuary legatee and executor. She gave Noel the usufruct of the property bequeathed to Vince.
The United States intervened in the succession as a creditor of Noel and filed a petition to foreclose tax liens exceeding $2.4 million against Noel’s usufructuary interest in the properties bequeathed to Vince. Noel had attempted to renounce the succession, but the government claimed Noel’s renunciation was either invalid or legally insufficient to prevent the tax liens from attaching. The United States then removed the case to federal court.
In August 1997 the United States offered to relinquish its rights with respect *386 to Noel’s interest in the succession for $171,500, of which $10,000 was to be paid by the succession and $161,500 by Vince, thereby also relinquishing any rights against Vince and the succession. At a hearing on November 5, 1997, however, Vince’s counsel stated the settlement could not be consummated because Vince did not have the money, and he did not make enough money to even cover the interest on conventional financing.
The parties later jointly moved to remand the case to state court for the limited purpose of having the executor sell the property inherited by Vince and for completion of probate, which the federal court did. Vince was ordered to cooperate with the executor in marketing and selling the properties, and the federal court retained jurisdiction to determine the rights of the competing parties to the net proceeds of the sale. •
During the three years the Julia Aubin property[1] was marketed, the succession received three “bona fide cash offers” that met all the requirements set forth by the succession, including proof of ability to pay. The lowest of these was $115,000; the highest was the offer of Reulet Family Holding, L.L.C., for $302,500, plus $600 for costs. On September 1, 1998, the succession filed a petition for homologation of the application to sell the property to Reulet, stating Reulet’s offer was the highest and best received with “verifiable ability to pay.” The succession noted that Vince had made a “purchase goffer” on August 26, 1998, to buy the property for $322,500, but he had failed to submit proof of ability to pay. Vince formally opposed the sale to Reulet, and a hearing was set for October 20,1998.
In the meantime, ■ the federal court granted a motion for summary judgment filed by the United States, finding Noel’s renunciation of the succession was invalid.[2] Consequently, it found the tax liens attached to the property as of the date of Bernice Brumfield’s death. That judgment later was summarily affirmed by the United States Fifth Circuit Court of Appeals.[3]
At the October hearing, Vince admitted he did not have the financial ability to pay the purchase price, but he asked the court to give him seven days to obtain financing. He testified he was a salesman in a local retail establishment and had a gross income in 1997 of $16,000. He also admitted he had personal credit problems, including credit-card debt and more than $10,000 in personal loans secured by promissory notes. He had lived on the Julia Aubin property for three years without paying rent, taxes, or insurance; he stated he was unable to pay these expenses.
He contended, however, that the Reulet offer should not be accepted and he should be given time to obtain financing because the Reulet offer was too low. Rudolfo J. Aguilar, an expert real-estate appraiser, testified the fair-market value of the property was $540,000. He noted, however, that when the market perceives there is pressure on the seller, offers are typically lower than fair-market value. He agreed that the presence of federal tax liens is a factor that tends to generate offers lower than fair-market value.
The trial court ordered the homologation of the petition for private sale to Reulet, with these oral reasons:
[T]hough Mr. Aguilar’s appraisal shows this property to be worth $500,000.00, this court has enough practical experience to know property does not always sell for what it’s appraised for. Appraisals are required by the banks, but the property sells for what somebody is willing to pay for it.
*387 In this case, there have been no offers anywhere close to Mr. Aguilar’s appraisal, and I don’t think that his appraisal is relevant to these proceedings.
The facts are, the only valid offer, or the highest and the best valid offer that has been made on this property is the $302,500.00 offer made by Mr. Reulet and his family holding, limited liability corporation, and, |4accordingly, I deny the opposition and order the homolo-gation of the petition for private sale and direct that that sale be completed as soon as possible.
Vince appeals, contending the trial court erred in granting the petition for homolo-gation and denying his opposition. He relies heavily on the 1975 fourth circuit case of Succession of Hausser,[4] in which the court reversed an order permitting the executor to sell to the second-highest bidder. He contends he was willing, and able to purchase the property, and that he should have been allowed to buy it.
A succession representative has a fiduciary duty to the succession; he has “the duty of collecting, preserving, and managing the property of the succession in accordance with the law.”[5] William contends he was exercising his fiduciary duty when he urged the court to accept the Reulet offer. He also contends the Hausser case is entirely distinguishable from this case. We agree.
In Hausser, the executor had conditionally accepted an offer of $100,000. Shortly thereafter, another bidder offered $110,000 with terms identical to the first offer. Despite the higher offer, the executor sought court approval of the $100,000 offer. All the legatees opposed the sale at $100,000. The property had been on the market only twenty days, and there were no unpaid creditors. The fourth circuit found no justification for the trial court’s rejection of the legatees’ unanimous opposition to the sale for $100,000.
The facts are quite different in this case. Vince’s offer was not on the same terms as the Reulet offer, at the time of the hearing, he had no ability to pay the purchase price and no source of financing. Only Vince opposed the sale to Reulet; all other parties were in favor of that sale. The property had been on the market for three years, and the United States was a very significant creditor.
In light of these facts, we find Vince’s reliance on Hausser to be misplaced. The Hausser court specifically noted that different facts might bring a different result, stating:
There may be limits on legatees’ or heirs’ rights to defeat a proposed private sale by the succession representative. Presumably the existence of creditors entitled to prompt payment might require approval of a sale at a price the heirs deem low. Presumably a showing that the property had been advertised for a lengthy period and that no better offer had been made might similarly justify approval of a sale opposed by the heirs, in order |Bultimately to bring the succession proceeding to a reasonably prompt conclusion.[6]
For the foregoing reasons, we find no error in the trial court’s judgment ordering the sale to Reulet to go forward and denying Vince’s opposition. The judgment of the trial court is affirmed. Noel Vincent Brumfield, II, is cast with all costs of appeal.
AFFIRMED. .

. This was one of the two properties bequeathed to Vince.

. The federal court’s reasons include a finding that Noel’s renunciation was not unconditional because he received "valuable consideration in exchange for his renunciation.”

.United States of America v. Brumfield, - F.3d - (5th Cir.2000).

. 320 So.2d 614 (La.App. 4th Cir.1975), writ denied, 323 So.2d 805 (La. 1976).

. La. C.C.P. art. 3191.

. 320 So.2d at 618.